GOODWIN | PROCTER

| | | |
|---|---|---|
| | Terry D. Garnett<br>213.426.2513<br>TGarnett@goodwinprocter.com | Goodwin Procter LLP<br>Counselors at Law<br>601 S Figueroa Street<br>41st Floor<br>Los Angeles, CA 90017<br>T: 213.426.2500<br>F: 213.623.1673 |

November 18, 2013

**VIA ECF**

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY   10007

Re:   *Hon Hai Precision Industry Co., Ltd. v. Wi-LAN Inc.,*
      **Case No. 12-cv-7900-SAS (S.D.N.Y.)**

Dear Judge Scheindlin:

Plaintiff Hon Hai Precision Industry Co., Ltd. ("Hon Hai") writes in response to Defendant Wi-LAN Inc.'s ("Wi-LAN") November 15, 2013 letter seeking to require immediate depositions on topics outside the limited scope permitted by the Court's July 10, 2013 Scheduling Order.  Hon Hai respectfully submits that, by limiting the scope on which depositions could be taken, the Court intended to prevent the parties from undertaking discovery that would ultimately prove unnecessary.  The Court limited the scope of deposition discovery to licensing issues, which Hon Hai respectfully submits should mean the interpretation of the license agreement, not compliance with the license agreement.  When the deposition testimony sought by Wi-LAN is limited to what this Court permitted in the Scheduling Order, Hon Hai's proposal that the deposition take place after the scheduled mediation is a reasonable attempt to limit litigation expenses.

By limiting deposition discovery to "licensing issues," this Court recognized that the interpretation of the license agreement is likely to be dispositive of the issues between the parties.  The interpretation dispute is over the scope of the definition of "V-Chip Receivers" for which Hon Hai agreed to pay a royalty.  The license agreement defines that term as: "any television receiver (with or without a display) which utilizes any aspect of, or the use of which is within the scope of, the Patent and, without limitation, a V-Chip Receiver is a receiver capable of: (1) blocking programming in accordance with 47 CFR 15.120(e), as amended; and (2) receiving a transport stream, which includes program rating system information, such as, by way of example only and without limitation, an ATSC signal such as any digital television receiver, set-top box, DVD recorder, desktop or notebook computer or other digital products containing an ATSC tuner."  Hon Hai has taken the position that the definition imposes two requirements: 1) the television receiver must utilize or be within the scope of the Patent; and 2) the television receiver must be capable of blocking programming in accordance with 47 CFR 15.120(e) and

GOODWIN | PROCTER

The Honorable Shira A. Scheindlin
November 18, 2013
Page 2

receiving a transport stream.  Because Hon Hai believes its products do not utilize or fall within the scope of the Patent, Hon Hai has not been paying royalties under the license agreement.  Wi-LAN, on the contrary, has taken the position that royalties are due if a product meets either of the two requirements.

Wi-LAN agrees that the Court limited deposition discovery to "licensing issues," but its view of the scope of that limitation effectively nullifies the Court's deferral of discovery on infringement.  If "licensing issues" includes the issue of whether Hon Hai has complied with the license agreement, discovery on patent infringement would be permitted at this time since, under either interpretation of the license agreement, a showing of infringement would be relevant to whether Hon Hai owed a royalty for those products.  Indeed, as set forth more fully below, Wi-LAN's current deposition topics include the "operation and functionality of Hon Hai's products" which is an infringement issue, not a licensing issue.  By expressly prohibiting deposition discovery on infringement, Hon Hai believes the Court intended to limit discovery to the narrow but dispositive issue of the interpretation of the license agreement.

It is helpful to note that, while Wi-LAN has recently added a counterclaim for breach of contract, the Scheduling Order was set in the context of Hon Hai's requests for declaratory judgment of non-breach and non-infringement.  As made clear in Hon Hai's complaint (ECF No. 27, ¶¶12-17), the request for a declaratory judgment of non-breach was based upon Hon Hai's interpretation of the license agreement applying only to products that utilize or fall within the scope of the '402 Patent.  If Hon Hai does not prevail on its interpretation of the license agreement, there would be no basis for the Court to provide Hon Hai the requested declaratory judgment relief.

Notably, of the seven categories of information Wi-LAN identifies as being the subject of its deposition notice, only one ("(5) the negotiation of the license agreement between Wi-LAN and Hon Hai") is relevant to the interpretation of the license agreement.[1]  Moreover, given that Wi-LAN was, by definition, involved in the negotiation, there is likely to be little information that can be provided by Hon Hai that is not already in Wi-LAN's possession.  Nevertheless, many months ago, Hon Hai produced documents to Wi-LAN related to the negotiation of the license agreement.  Hon Hai also proposed that the deposition (as limited by the Court) be held in January and in conjunction with the deposition of Wi-LAN on the same topic, which would provide more than adequate time before the discovery deadline.

While this Court limited depositions to interpretation of the license agreement, it did not limit document production.  Thus, Hon Hai has provided fulsome sales data related to its products, and also technical documents related to the functioning of its products.  These later categories of documents, however, are outside the scope of deposition discovery permitted by the Court at this time.  While Wi-LAN may want

---

[1] The remaining categories are (1) the operation and functionality of Hon Hai products; (2) the sales of Hon Hai's products; (3) the manufacture, use, sale, offer to sell, importation, and exportation of Hon Hai's products; (4) Hon Hai's corporate structure; (6) Hon Hai's compliance with industry standards and FCC regulations; and (7) the components of Hon Hai's products provided by third parties.

GOODWIN | PROCTER

The Honorable Shira A. Scheindlin
November 18, 2013
Page 3

to proceed with depositions on these broader topics, that desire ignores this Court's decision to bifurcate contract interpretation and infringement issues at the deposition phase, and to first resolve the meaning of the license.

The reasons given by Wi-LAN for its need for earlier depositions relate to its purported need to determine, from Hon Hai and third parties, "how the products function and operate." This, however, is the type of technical discovery that is not permitted under the Court's Scheduling Order. While compliance with industry and FCC regulations would be relevant to whether the definition of V-Chip Receiver is met by certain Hon Hai products, so too would infringement of the '402 Patent be relevant. Given that the Court clearly did not intend for deposition testimony to address patent infringement, there is no reason to believe it should encompass whether Hon Hai products satisfy other parts of the V-Chip Receiver definition.

Wi-LAN's claim to need depositions to determine the completeness of Hon Hai's document production likewise does not justify an accelerated timeframe. Wi-LAN raised its purported concerns regarding the document production in a letter dated November 11, 2013, after the parties had already discussed the timing of the depositions. Wi-LAN states that Hon Hai has not produced any internal communications; of course, internal communications with counsel regarding the negotiation of the license agreement at issue would be privileged, and to the extent Hon Hai has such correspondence, it has been listed on its privilege log. Wi-LAN also fails to mention that Hon Hai long ago produced non-privileged electronic emails regarding negotiation of the subject license agreement, which fits within the scope of deposition discovery permitted by this Court. If Wi-LAN has legitimate concerns regarding Hon Hai's document production, it should be addressed directly, rather than being used in an attempt to impose additional discovery burdens on Hon Hai.

Hon Hai does not seek to unreasonably delay discovery. However, Hon Hai respectfully submits that both the limitation on deposition discovery and the referral to Magistrate Judge Maas for mediation were intended to keep the parties from incurring unnecessary litigation expenses. The parties originally suggested that the mediation be held in November, and thus contemplated that the mediation may occur before depositions. Hon Hai's proposal that the depositions be conducted after the mediation is likewise an attempt to limit potentially unnecessary litigation expenses. Wi-LAN's insistence on earlier depositions and on an overly broad range of topics is contrary to that spirit. Hon Hai respectfully requests that Wi-LAN's request be denied and that depositions be limited to the interpretation of the license agreement.

Respectfully submitted,

/s/ Terry D. Garnett

Terry D. Garnett


Cc   All counsel of record via ECF

LIBA/2448039.4

GOODWIN | PROCTER

The Honorable Shira A. Scheindlin
November 18, 2013
Page 4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule 5.2 via the Court's CM/ECF system on November 18, 2013, and, as such, was served on all counsel of record.

                                             /s/ Peter J. Wied
                                             Peter J. Wied